## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

GEORGE W. ADLER and
DEBRA ALDER, as TRUSTEES
of the ALDER EMPLOYEES
PENSION FUND,

Plaintiffs,

v.

B.C. ZIEGLER AND COMPANY,

Defendant,

and

BANK ONE TRUST COMPANY, N.A.,

Defendant and Third-Party Plaintiff                    No. 01-C-1119

v.

ALDER GROUP, INC.,

Third-Party Defendant

## MEMORANDUM AND ORDER

HERNDON, District Judge:

### I.  Introduction

On November 1, 2001 Plaintiffs George and Debra Alder, as trustees of

the Alder Employees Pension Fund ("Plaintiffs") filed this Employee Retirement

Page 1 of  28

Income Security Act of 1974 ("ERISA"), as amended, **29 U.S.C. § 1001 et seq.**

action against Defendants Bank One Trust Company ("Bank One") and BC Ziegler

and Company ("Ziegler") (collectively, "Defendants"). (Doc. 1.) Plaintiffs' Second

Amended Complaint was filed on October 31, 2002. (Doc. 38.) That Complaint

contains two counts — Count One against Bank One for failure to follow the terms

of plan documents and Count Two against both Bank One and Ziegler for breach of

fiduciary duty. Crossclaims were also filed by Bank One and Ziegler (Docs. 15, 25),

and Bank One filed a third-party indemnification action against the Alder Group.[1]

(Doc. 30.)

This case proceeded to bench trial in this Court on December 20, 2005.

At the close of trial, the parties filed proposed findings of fact and post-trial briefs.

Having heard the evidence in the case, having reviewed the parties' submissions, and

in accord with **Federal Rule of Civil Procedure 52**, the Court finds and concludes

as follows.

## II. <u>Findings of Fact</u>

1. Robert Alder & Sons, Inc. is a Wisconsin corporation. Robert Alder & Sons,

Inc. is in the milk and ice cream distribution business, and has been a distributor

of products of Dean Foods Company since 1921. (Tr. 7, 8.)

2. George Alder at some times material hereto served as the Chief Executive

Officer of Robert Alder & Sons, Inc. (Tr. 8.)

---

[1] This action has been dismissed by the Court. (Doc. 197.)

3.      Plaintiff Debra Alder, is currently the Chief Executive Officer of Robert Alder & Sons, Inc. (Tr. 8.)

4.      The Alder family also owns and operates third-party defendant, Alder Group, Inc., a management company that oversees the operations of five other operating companies that are owned and operated by the Alders. (Tr. 7-8.)

5.      The five Alder operating companies are distributors of Dean Foods Company milk and ice cream products. (Tr. 7.)

6.      Debra Alder is both the Chief Executive Officer for Alder Group, Inc. and all the Alder's operating companies. (Tr. 8.)

7.      Alder Group, Inc. is the Plan Sponsor of the Alder Employees Pension Plan (the "Plan"). (Tr. 711.)

8.      The Plan document was admitted as Ex. 2047. It became effective December 1, 1989, and remained in place, without amendment, through at least April 2001. (Tr. 33.)

9.      The Plan is a "defined benefits" plan. The amount of investment return earned on the Plan's assets does not alter the benefits of the employee-beneficiaries of the Plan. Rather, the investment returns only determine the amount of money that the Plan Sponsor must contribute to the Plan on an ongoing basis in order to meet the defined obligations to the beneficiaries. (Tr. 48-49.)

10.     The Plan document identifies Robert Alder & Sons, Inc. (and its subsidiaries and affiliates) as the Plan Administrator (Ex. 2047, Arts. 1.24, 1.12 and 1.6; Tr. 37.)

11.     The Plan describes the "Powers, Rights and Duties of the Plan Administrator"

in its Article 10.2, including the power to direct the trustee with respect to payments from the Plan, but nowhere in the Plan does it grant to the Plan Administrator any power, right, duty or authority to direct the investment of the Plan assets. (Ex. 2047, Art. 10.2; Tr. 38-39.)

12.     Many years ago, George Alder established a trust to hold and invest the assets of the Plan. The Alder Employees Pension Trust Agreement, Amendment No. II, which was made on December 15, 1971, was admitted as Ex. 2048 (the "Trust Agreement"). The Trust Agreement defines the powers and duties of the Trustee. (Ex. 2048, pp. BAN000166-177.)

13.     The Trust Agreement remained in place, without amendment, from December 15, 1971 through at least the end of 2000. (Tr. 35.)

14.     The current trustees for the Plan are Plaintiffs George Alder and Debra Alder. (Tr. 44; 10.)

15.     From approximately 1996 through 2001, Debra Alder also assisted in the Plan Administrator work on behalf of the Plan as she served as her father's right-hand person. (Tr. 11.)

16.     From October 1998 forward, George Alder and Debra Alder were among the three individuals specifically authorized to give notices, instructions or certifications for the Alder Employees Pension Trust. (Ex. 2013, p. ALDTR00346.)

17.     Defendant Bank One Trust Company, N.A. ("Bank One") served as Trustee immediately prior to George Alder and Debra Alder.

18.     Defendant B.C. Ziegler and Company ("Ziegler") is the investment manager for

the Plan. (Tr. 18.) The Alders hired Ziegler in the summer of 2000 as part of their decision to terminate Bank One's trusteeship and to use a different investment manager. (Tr. 18-19.)

19.     From at least 1996, when Bank One was a Trustee, Bank One sent to the Alders and Robert Alder & Sons, Inc. both quarterly and annual reports regarding the performance of the Plan's assets held in the trust account. (Tr. 46.)

20.     These quarterly and annual reports are required by Section 5.05 of the Trust Agreement. (Tr. 99; Ex. 2048, Art. 5.05.)

21.     These account statement reports were generated automatically by Bank One's "SEI" trust accounting software and which was programmed to automatically generate and mail the quarterly and annual account statements to the Alders at their office address in Delavan, Wisconsin. (Tr. 336.)

22.     The Alders received these quarterly and annual reports via US Mail at their offices in Delavan, Wisconsin, and never raised any concern with Bank One about not timely receiving the reports. (Tr. 47-48; 337.) None of the reports for the Alders' account were ever returned to Bank One by the Post Office as undeliverable. (Tr. 451.)

23.     For many years prior to 1994, George Alder instructed the Trustee that he wanted the Trust to hold some of the Plan assets in the form of stocks of four specified companies: Dean Foods Company ("Dean Foods"); Schultz Sav-O Stores ("Schultz"); Fleming Company ("Fleming"); and WICOR, Inc. (collectively, the "subject stock"). (Tr. 66; 735; Ex. 3.)

Case 2:01-cv-01119-DRH   Filed 08/16/06   Page 5 of 28   Document 199

24.     George Alder instructed Bank One to have the Plan Trust hold the subject stock as an employee empowerment and motivation tool. He loved being able to motivate his employees to give great service to Dean Foods, Schultz and Fleming by reminding them that their pension assets were invested in those companies. (Tr. 53-55.) Having the Plan's trust hold the subject stock for this purpose was "an absolute" for Alder. (Tr. 54.)

25.     George Alder was committed to holding the stocks as part of the Plan assets regardless of their performance as investments. (Tr. 53-57; 63.)

26.     The Fleming stock value went up and down substantially during the 1990s, but even when the subject stock fell in value, George Alder did not want the Plan's trust account to sell them. (Tr. 63; 118.) For example, during a period in the 1990s the value of the Fleming stock held by the Plan's trust dropped from $763,949 to $272,033.50 (Tr. 119), but even then Alder wanted the Plan to own the stock. (Tr. 56-57.)

27.     In March 1994, Bank One assigned Michael Horning to be the new relationship manager in charge of the Alders' account. (Tr. 734.)

28.     When Horning took over the account and reviewed its file, he noticed the holdings of the subject stock in the account and learned of George Alder's historical instruction that the Plan hold the subject stock. Despite the fact that the Trust had held this stock for many years, Horning sought some liability protection for the Bank in relation to its compliance with Alder's instruction because he believed that, as a matter of the Plan documents, Bank One had discretionary authority over the

investment of the Trust's assets. (Tr. 735.)

29.    Accordingly, using some form letters that he discovered at the Bank's offices, Horning prepared and sent to George Alder in October 1994 four separate letters, each of which related to one of those four specified companies. (Tr. 735-36; Ex. 2001; Tr. 67.)

30.    In essence, the letters confirmed George Alder's instructions to the Trust to hold the stocks, and contained indemnification language to hold Bank One harmless for any loss or liability that it may have as a result of following that instruction (the "Indemnification Letters"). (Ex. 2001; Tr. 67-68.)

31.    George Alder signed the four Indemnification Letters from Bank One in October 1994. (Tr. 171-72.)

32.    Horning, the Trust Officer at Bank One who had primary account responsibility for the Trust in the fall of 1994 when Bank One had George Alder sign the Indemnification Letters, and who drafted the Indemnification Letters, did not consider the Indemnification Letters to be Plan documents or a statement of investment policy in the form of guidelines or general instructions applicable to the Trustee's investment decisions. (Tr. 737-38.)

33.    The Indemnification Letters did not constitute or cause any amendment to the Plan or the Trust Agreement. (Tr. 738; 33; 35.)

34.    Donald Brovick replaced Horning as the relationship manager for the Alders' account in December 1994, and Brovick remained in that role until the Alders' account left Bank One. (Tr. 335.) Horning informed Brovick of the Indemnification

Case 2:01-cv-01119-DRH   Filed 08/16/06   Page 7 of 28   Document 199

Letters. (Tr. 338.)

35.     George Alder gave Bank One oral instructions to have the Trust sell its stock holdings relating to WICOR, and Bank One complied.  (Tr. 15; 339.)

36.     In November 1998, George Alder reviewed and signed a Trust Funding Policy that he received from Bank One.  (Ex. 2113, pp. ALDTR00348-351.)

37.     The Trust Funding Policy confirmed that it was to be used only "in instances where Bank One has full investment authority of the employee benefit plan." (Ex. 2013, p. ALDTR00348.) The  Alders never objected to this language. (Tr. 344.)

38.     Along with that Trust Funding Policy, George Alder signed an "Authorization" form that confirmed his acknowledgment that Bank One had authority to choose the investments for the account, and specifically acknowledged that Bank One had the discretion to use its One Group Funds (a family of mutual funds) as an investment alternative for the account. The pertinent language from the Authorization is:

> With the knowledge that the decision as to the suitability of the investment for the account remains with Bank One, as a part of the proper exercise of its fiduciary duty under the account's governing document, I hereby authorize and approve the use of The One Group Funds as an investment alternative for the account . . . .

 (Ex. 2013, p. ALDTR00347.)

39.     Before he returned the signed Trust Funding Policy to Bank One, George Alder typed the following information into a section of the document entitled "Unique Needs, Preferences or Legal Constraints": "Continue to look as favorably as possible upon those shares of stock owned by Alder Pension Trust Fund in the name of Dean Foods Company, Fleming Company & Schultz Sav-O, Sheboygan."  (Ex. 2013, p.

ALDTR00351.)

40.    In the Summer of 2000, the subject stock represented approximately 66% of the Plan's assets. (Ex. 2026, p. BC0080.)

41.    By the Fall of 2000, the investment performance of the subject stock was far inferior to the investment performance of the remainder of the assets in the Trust account that were actively managed by Bank One. The subject stock had significantly underperformed the rest of the Plan's assets over the prior 1, 3 and 5-year periods. (Ex. 2017; Tr. 352-54.)

42.    Bank One met with the Alders and discussed with them the inferior investment performance of the subject stock, giving them a copy of an investment performance summary prepared by Brovick (admitted as Ex. 2017). (Tr. 350.)

43.    George Alder then hired Ziegler.  (Ex. 2033.)

44.    At Ziegler's suggestion, George Alder and Debra Alder, as Directors of Robert Alder & Sons, Inc., signed a Board of Directors resolution on October 24, 2000, in order to change the Plan Trustees from Bank One to "George W. Alder and Debra J. Alder, directors of the Robert Alder & Sons, Inc." (Exs. 2005 and 2034; Tr. 41.)

45.    Debra Alder returned the signed board resolution to Ziegler and considered the resolution to be effective and considered herself to be a Plan Trustee from that point in October 2000. No one from Ziegler or Bank One suggested otherwise. (Tr. 43.)

46.    George Alder and Debra Alder expected Bank One to follow the instructions of Ziegler regarding the transfer of the assets. (Tr. 74.)

47.     In October 2000, George Alder and Debra Alder signed Ziegler's "Letter of Authorization." (Ex. 2000, p. BAN000115.)

48.     Ziegler's cover letter to the Alders that accompanied the Letter of Authorization instructed the Alders that Ziegler needed them to sign the Letter of Authorization in order "to transfer the assets from your Employees' Pension Fund from Bank One." (Ex. 2006.)

49.     George Alder and Debra Alder understood that Ziegler needed them to execute the Letter of Authorization to permit Ziegler to cause the transfer of assets from Bank One to Ziegler or its designee. (Tr. 69-70.)

50.     When Debra Alder signed Ziegler's Letter of Authorization, she intended to give Ziegler the authority to effect the transfer of assets from Bank One to Ziegler.  (Tr. 72.) She believed that armed with that signed Letter of Authorization, Ziegler could go forth and get the account at Bank One closed and the Plan assets transferred without any need for her further involvement in that process. (Tr. 75.)

51.     The Alders returned the signed Letter of Authorization to Ziegler on October 31, 2000. (Tr. 71-72.)

52.     In December 2000, Bank One was notified of Plaintiffs' request to close the Trust account. The request was in the form of a letter to Bank One dated December 7, 2000 from Ziegler that included the Letter of Authorization that was signed by George Alder and Debra Alder, with those signatures guaranteed as authentic with medallion stamps. That December 7 letter requested Bank One to liquidate the assets of the Alder's Trust account. (Ex. 2000.)

53.     Ziegler's December 7 letter to Bank One was on Ziegler's company letterhead which identified Ziegler as a member of SIPC — Stockholders Insurance Protection Corporation. (Tr. 229) This membership and designation is required by the NASD and it confirms to any reader that the organization is not some fly-by-night outfit, but instead is a fully insured member of SIPC. (Tr. 229; 477.)

54.     The medallion stamp guarantees on the Alders' signatures on the Letter of Authorization confirm that the signatures are authentic, and in this circumstance, the medallion stamps on signatures on a Letter of Authorization confirmed to Bank One that the Alders gave Ziegler the authority to direct the transfer of the assets. (Tr. 233; 481; 489.)

55.     In December 2000, Ziegler had a "DTC" (Depository Trust Company) number that it used all the time to transfer securities in kind. (Tr. 236.)

56.     The Letter of Authorization signed by the Alders contained transfer instructions that were limited to sending a check for the account assets, but the Letter contained no DTC instructions. (Tr. 479; 236.) In fact, the person who prepared the Letter of Authorization for the Alders' signatures, Schilffarth's administrative assistant, Constance McCauley, confirmed in her testimony that she did not include on the form any information that would suggest that any of the assets were to be transferred in kind. (Tr. 284.)

57.     Ziegler's Operations Department that was assigned the task of directing the transfer of Plan assets from Bank One interpreted the Letter of Authorization as calling for the liquidation of all account assets because it called for the transmission

of the assets in the form of a check. (Tr. 307.)

58.     For Ziegler, it was standard industry practice to have a liquidation of an account's assets if the assets were to move from a bank to Ziegler. (Tr. 326.)

59.     For Bank One, it similarly was common practice for the Bank to be required to liquidate the assets of a trust account as part of closing the account and transferring the assets to a new trustee or custodian. (Tr. 473; 535.)

60.     A couple of days after Bank One received Ziegler's December 7 letter and the Letter of Authorization, Brovick called Debra Alder and asked about the Alders' termination of the Bank's trusteeship. (Tr. 24-25; 356.)  Alder told Brovick that she and her father had decided to terminate the Bank's services as Trustee and investment manager for the Trust, and replace it with Ziegler. (Tr. 357) Alder further informed Brovick that Schilffarth at Ziegler struck a cord with George Alder, and that they were taking the Plan's assets in a new direction and were going to be implementing some diversification by reducing or eliminating the individual stock holdings. (Tr. 357; 25.)

61.     Convinced that the Alder's decision to terminate Bank One's trusteeship was not reversible, Brovick forwarded the December 7 letter from Ziegler, along with the Letter of Authorization signed by the Alders, to the account administrator at Bank One who then forwarded it and other paperwork to Bank One's Institutional Closing Unit in Columbus, Ohio. (Tr. 358.)

62.     In response to the closing request, Bank One's Manager of its Institutional Account Closing Unit, Cheryl Christ, sent by facsimile on December 20, 2000 a letter

and a checklist of information that Bank One needed in order to close-out the Trust account and transfer the assets. (Ex. 2014; Tr. 483-84.) Bank One's clients typically compile and return the required information in one week, or two weeks at the most. (Tr. 485.)

63.    Christ faxed the December 20 letter and checklist both to Ziegler, and also directly to Debra Alder who admits that she received it but did not do anything with it. (Tr. 27-28, and Ex. 37; Tr. 484.)

64.    Among other things, the checklist asked Ziegler and Debra Alder to provide certain  information needed by Bank One to close the account and transfer the assets, and specifically asked for a liquidation date for the assets. (Ex. 2014, p. BC0003.)

65.    At Ziegler, the Operations Department received the December 20, 2000 fax from Bank One and transferred it to Shilffarth's assistant, McCauley. (Tr. 312.)

66.    Debra Alder received the December 20 fax from Bank One and looked through it, but she chose not to do anything to respond to it. (Tr. 28) Bank One did not receive any communication from Debra Alder in December 2000 or January 2001 in response to its December 20 letter and checklist. (Tr. 84-85; 491.)

67.    Also on or about December 20, Christ called Ziegler and left a voice mail message for Ziegler's Operations Department in which she told Ziegler that Bank One needed a liquidation date before it could liquidate the Plan's assets. (Tr. 482-83.)

68.    Sometime in December 2000 (but before December 28), Richard Schilffarth asked Casey Warichak of Ziegler's Operations Department about the status of the

asset transfer from Bank One. With a somewhat angry and hostile tone, Schilffarth instructed Warichak to have the entire account liquidated. (Tr. 323.)

69.     On December 28, 2000, at approximately 4:45 p.m. EST, Ziegler faxed to Bank One a second letter instructing Bank One to liquidate the Trust account assets. (Ex. 2002; Tr. 328-29.)   Ziegler's second liquidation instruction specified that the liquidation should occur the very next day, on December 29, 2000, and that the sale proceeds should be held in an account until the client (the Alders) sent the rest of the requested information. (Ex. 2002.)

70.     According to Ziegler's instructions, Bank One caused the liquidation of the account assets on December 29, 2000, and held the proceeds in an account as it waited for the requested information. (Tr. 488; 490.)

71.     Plaintiffs concede that Bank One received full market value for the subject stock in their sale on December 29, 2000. (Tr. 80.) As a result, the Plan's trust held the same amount of assets immediately after the liquidation as before, except that the assets were in a more liquid form. (Tr. 80.)

72.     As a matter of standard practice, the Bank's account closing process does not consider prior investment arrangements or instructions when closing a trust account because all of those prior investment instructions are superseded by the account closing instructions.  (Tr. 489-90; 521.)

73.     Christ sent a sample board resolution to Debra Alder on December 20, 2000 that could be adapted and used to confirm that Bank One was being removed as Trustee, that a successor Trustee was being appointed, and to specify an effective

date for the transfer of Trustee responsibilities. (Ex. 2014, p. BC0004.)

74.     Debra Alder did not undertake any efforts in December or January to compile the information required by Bank One (specified in the December 20, 2000 fax communication) in order to transfer the Plan assets. (Tr. 85.) Nor did she ask Ziegler for copies of Ziegler's communications to Bank One directing the account closing and asset transfer. (Tr. 76-77.)

75.     In January, having not received the requested information regarding the closing of the account, Bank One's Closing Unit made numerous telephone calls to Ziegler to ask about the status of the requested information and to prompt the process. (Tr. 329; 539; Ex. 2045, p. BAN000026-27.)

76.     Bank One specifically told Schilffarth's assistant, Constance McCauley, that the transfer of the assets was being held up by the Bank's waiting to receive the documentation it requested. (Tr. 279) Ziegler's Operations Department also reminded McCauley that the Bank was waiting to receive the requested information. (Tr. 330.)

77.     Despite its efforts to prompt Ziegler, Bank One did not receive the required closing information in December, January or February. (Tr. 539.)

78.     Among the documents forwarded by Debra Alder to Bank One on March 16, 2001, was a "Secretary's Certificate" signed by Debra J. Alder on February 27, 2001 in her capacity as the Corporate Secretary of the Alder Group, Inc., as well as the "Minutes of the Special Meeting of the Board of Directors of Alder Group, Inc." that was signed by both Debra J. Alder in her capacity as Corporate Secretary, and

Case 2:01-cv-01119-DRH   Filed 08/16/06   Page 15 of 28   Document 199

George W. Alder in his capacity as the Chairman of the Board. (Ex. 2050, p. BAN000085-87.)

79.     The "Minutes of the Special Meeting" were prepared by the corporate legal counsel for Alder Group, Inc., Robert E. Meldman, who was also a Director of the company present at the special meeting. (Tr. 29, Ex. 2050.)

80.     The "Minutes of the Special Meeting" of the Board of Directors of the Alder Group, Inc. that was held February 27, 2001 reflected the Board's decision to remove Bank One as the Plan's Trustee, and to appoint George Alder and Debra Alder as successor trustees. (Ex. 2050, p. BAN000086.)

81.     The Minutes of the Special Meeting contained a resolution in which Alder Group, Inc. agreed to indemnify and hold harmless Bank One "from and against all claims, expenses, liabilities, damages, actions, suits or other charges incurred or assessed against [Bank One] as the former trustee under the Plan affecting the assets of the trust fund or investment responsibility with respect to such assets." (Ex. 2050, p. BAN000087.)

82.     Bank One relied on the resolutions contained in the Minutes of the Special Meeting by foregoing any further legal review (and risk assessment) and instead accepted the Alders' resolution as sufficient to permit a transfer of the Plan assets. (Tr. 499.)

83.     Bank One exchanged other communications with Debra Alder in mid-March 2001 to obtain additional information that was still needed, such as verification that Debra Alder and George Alder accepted the trusteeship, verification of insurance

bonding, and verification of instructions for wiring cash proceeds. (Exs. 2039, 2040, 2041.)

84.    Finally, on March 22, 2001, the Closing Unit had received from the Alders all the requested information. Specifically, on that date Bank One received from Debra Alder a written request to send the "cash proceeds" by wire transfer on March 26, 2001 to Ziegler. (Tr. 91; Ex. 2039.) Alder's instruction exclusively referred to "cash," and Alder never gave Bank One any transfer instructions that could be used to transfer securities in kind. (Tr. 91.)

85.    Bank One followed Alder's written instruction and sent the account proceeds by wire transfer to Ziegler's designee on March 26, 2001. (Tr. 497.)

86.    Bank One did nothing in January or February 2001 to in any way impede Plaintiffs' ability to compile and forward to Bank One the required information needed to close the trust account and transfer the assets, as specified in the December 20, 2000 fax transmission from Christ at Bank One to Ziegler and Debra Alder. (Tr. 86.)

87.    Debra Alder concedes that if she would have returned to Bank One the requested information described in Bank One's December 20, 2000 fax communication by early January 2001, the Plan assets could have been transferred from Bank One then. (Tr. 93.)

88.    Schilffarth learned on April 2, 2001 that Ziegler received only cash assets from Bank One, but he chose to wait 11 days before telling the Alders on April 13, 2001. (Tr. 238-39.)

89. By April 2001, George Alder and Debra Alder were the Trustees of the Plan Trust and, as such, had authority to require the Trust to purchase the stock of Dean Foods, Fleming and/or Schultz. (Tr. 81, 223.)

90. At no time since George Alder became a Trustee of the Plan's Trust has he caused the Trust to purchase any of the stocks of Dean Foods, Fleming or Schultz. (Tr. 223.)

91. As Trustee, Debra Alder has never made any effort to invest any of the Trust Fund assets in stock of Dean Foods, Fleming or Schultz companies. (Tr. 81; 32; 223.)

92. According to Plaintiff Debra Alder, the only thing that Bank One did wrong was to liquidate the Subject Stocks rather than transfer them "in kind." (Tr. 79-80.)

93. Sometime in early January 2001, pursuant to its standard procedure, Bank One mailed a year 2000 annual account statement for the Alder trust account to Plaintiffs. (Tr. 501-02.)

94. That 2000 account statement identifies the pending sale of the subject stock. (Ex. 2057 (also admitted as Ex. 1006), pp. 31-32; Tr. 98.)

95. George Alder made markings and calculations on the annual account statement on February 8, 2001. (Ex. 2057 (and Ex. 1006), pp. 3-4; Tr. 116.)

96. In early January 2001, pursuant to its standard procedure, Bank One mailed a fourth quarter account statement for the Alder trust account to Plaintiffs. (Tr. 501-02.)

97. Like the 2000 year-end account statement, the fourth-quarter 2000 account

statement also confirmed that the subject stock was sold on December 29, 2000. (Ex. 2038, p. ALDTR00018; Tr. 96.)

98.    Debra Alder concedes that she reviewed the fourth quarter 2000 account statement within a couple of days of April 13, 2001. (Tr. 96.)  She also concedes that neither she nor anyone on her  behalf made a written objection to Bank One within 90 days of receiving the report (as described in Article 5.06 of the Trust Agreement). (Tr. 100.)

### III.  Conclusions of Law

1.    This Court has jurisdiction over this matter pursuant to **28 U.S.C. § 1331**.

2.    Claims for breach of fiduciary duties under ERISA are only valid against fiduciaries.  **Plumb v. Fluid Pump Serv., Inc.**, **124 F.3d 849, 854 (7th Cir. 1997)**.  Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

**29 U.S.C. § 1002(21)(A)**.  This language imposes a higher standard of care on those who deal with plan assets.  **FirsTier Bank, N.A. v. Zeller**, **16 F.3d 907, 911 (8th Cir. 1994)** (citing **John Hancock Mut. Life. Ins. Co. v. Harris Trust & Sav. Bank**, **510 U.S. 86, 96 (1993)**).  In keeping with ERISA's remedial purpose, courts

Case 2:01-cv-01119-DRH   Filed 08/16/06   Page 19 of 28   Document 199

liberally construe the term "fiduciary." ***Farm King Supply, Inc. v. Edward D. Jones & Co.***, **884 F.2d 288, 291-92 (7th Cir. 1989)**.

3.      A person or entity can be a fiduciary for some purposes but not for others. ***Plumb***, **124 F.3d at 854**; ***Klosterman v. Western Gen. Mgmt., Inc.***, **32 F.3d 1119, 1112 (7th Cir. 1994)**.  In determining whether an entity is liable for breach of a fiduciary duty, a court must determine whether the person or entity is a fiduciary with respect to the conduct at issue.  ***Plumb,* 124 F.3d at 854**.

4.      Pursuant to **29 U.S.C. § 1104(a)(1)(B)**, a plan fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims."  **29 U.S.C. § 1104(a)(1)(B)**.  This duty concerns the overall management of a plan, and its assets in particular.  ***Frahm v. Equitable Life Assurance Soc'y***, **137 F.3d 955, 960 (7th Cir. 1998)**.  It is intended to hold plan administrators to a duty akin to that of a common-law trustee.  ***Ameritech Benefit Plan Comm. v. Workers of America***, **220 F.3d 814, 825 (7th Cir. 2000)**.

5.      "Accordingly, 'the fiduciary must act as though [he] were a reasonably prudent businessperson with the interests of all the beneficiaries at heart."  ***Jenkins v. Yager***, **444 F.3d 916, 924 (7th Cir. 2006)** (citing ***Ameritech Benefit Plan Comm.*, 220 F.3d at 825**)).

### **<u>Bank One's Liability</u>**

Page 20 of  28

6.    Under **29 U.S.C. § 1103(a)(1)**, unless a plan expressly renders a trustee subject to the direction of a named fiduciary, the plan trustee has "exclusive authority and discretion to manage and control the assets of the plan."   **29 U.S.C. § 1103(a)(1)**.[2]

7.    In exercising this exclusive authority, a fiduciary must act "in accordance with the documents and instruments governing the plan."  **29 U.S.C. § 1104(a)(1)(D)**.

8.    Here, Plaintiffs argue that the hold-harmless letters drafted by Bank One and signed by George Alder qualify as "documents and instruments governing the Plan" within the meaning of **29 U.S.C. § 1104(a)(1)(D)**.   As Department of Labor regulations suggest, statements of investment policy issued by named fiduciaries authorized to appoint investment managers may function as governing documents within the meaning of that subsection.  **29 C.F.R. 2509.94-2**.

9 .    Even assuming these letters qualify as statements of investment policy, however, the wording of **29 U.S.C. § 1103(a)(1)** is clear: in order for a plan trustee's discretion to be limited, the plan must "expressly provide[ ] that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee." **29 U.S.C. § 1103(a)(1)**.

10.    In this case, the Plan contains no express language limiting Bank One's

---

   [2]  **29 U.S.C. § 1103(a)(2)** also provides that a trustee's exclusive authority may be limited to the extent "authority to manage, acquire, or dispose of assets of the plan is delegated to one or more investment managers."  **29 U.S.C. § 1103(a)(2)**.  That subsection, however, is not relevant here.

Case 2:01-cv-01119-DRH   Filed 08/16/06   Page 21 of 28   Document 199

discretion. The Plan documents themselves, further, were not amended. As such, the Court finds that Bank One was not bound by George Alder's statement in the hold-harmless letters.[3]

11.    Therefore, since the hold-harmless letters were not plan documents, Bank One cannot be found liable for failing to follow the terms of plan documents. Count I, thus, must fail.

12.    Further, since Bank One was not bound by the hold-harmless letters, it had discretionary investment authority over the funds invested in the subject stock.

13.    Bank One was thus an ERISA fiduciary as to the funds invested in the subject stock. *See* **29 U.S.C. § 1002(21)(A)**.

14.    In the alternative, even if Bank One did not have discretionary investment authority over the funds invested in the subject stock, it was still an ERISA fiduciary as to those funds. **29 U.S.C. § 1002(21)(A)(i)** provides that any person who exercises any control over management or the disposition of assets qualifies as a fiduciary for ERISA purposes. **29 U.S.C. § 1002(21)(A)(i)**. Here, Bank One, as the party that actually sold the subject stock (thereby initiating the events leading to this lawsuit) had at least some degree of control of the disposition of plan assets. That

---

[3] This finding, it might be noted, may conflict somewhat with what Bank One understood its obligations to be. Even so, because the question of whether Bank One had discretion is a question of law to be decided independent of Bank One's subjective beliefs, Bank One's subjective beliefs are not determinative as to the hold-harmless letters' validity. *See, e.g.,* ***Farm King Supply,*** **884 F.2d at 292** (noting that a person's subjective beliefs about whether or not she is a fiduciary are irrelevant).

Case 2:01-cv-01119-DRH   Filed 08/16/06   Page 22 of 28   Document 199

fact renders it a fiduciary under **29 U.S.C. § 1002(21)(A)(i)**. *See, e.g.,* ***Summers v. State St. Bank & Trust Co.***, **No. 05-4005, 2006 U.S. App. LEXIS 16186, at *2-4 (7th Cir. June 28, 2006)**.

15.     Because Bank One was a fiduciary, the question then becomes whether Bank One breached its fiduciary duty.

16.     The Court finds that Bank One did not breach its duty, for several reasons. First and foremost, Bank One received two letters from Ziegler, Plaintiffs' agent, instructing it to liquidate the subject stock.   The first of these letters was accompanied by the Alders' signatures and medallion stamps, and both letters contained specific instructions about how to liquidate (including the information, in the first letter, that Bank One was to make out a check with all Plan assets and the notice, in the second letter, that Bank One was to deposit Plan funds into a money-market account.)

17.     Second, Bank One took several steps to ensure that the liquidation instructions it received from Alder were accurate.  In addition to calling Ziegler to request a liquidation date, Bank One sent a letters to both Debra Alder and Ziegler requesting additional information about the proposed liquidation and transfer. Debra Alder did not respond, despite receiving the letter, and Ziegler responded by providing a specific liquidation date along with additional information about the transfer.

18.     Third, Ziegler was, as evidenced by its SPIC designation, an established

Page 23 of  28

financial institution, which Bank One was entitled to believe possessed a certain degree of competency in its actions.

19.     Fourth and finally, Debra Alder, in her discussion with Bank One employees, informed Bank One that Plan assets were being transferred to Ziegler in part because the Alders wanted to go in a different direction.  This information would have made a substantial shift in the Alders' long-standing preference to hold the subject stock seem more plausible.

20.     Therefore, the Court finds that Bank One acted with the requisite degree of prudence, and thus that Plaintiffs cannot succeed on Count II against Bank One.[4]

## Ziegler's Liability

21.     The first question is whether Ziegler can be classified as a fiduciary.

22.     In this case, Ziegler had a letter of authorization from Plaintiffs to effectuate a transfer of assets from Bank One. This letter allowed Ziegler to effectuate the transfer of the Plan's assets to it from Bank One.  **29 U.S.C. § 1002(21)(A)**.

23.     The Court finds that in performing this task, Ziegler exercised "authority or control respecting management or disposition of its assets."  This renders Ziegler an ERISA fiduciary.  *See* **29 U.S.C. § 1002(21)(A)(i)**.

24.     Although Ziegler argues, in opposition, that it should not qualify as a fiduciary because it did not have discretion over or possession of the Plan's assets, the Court disagrees.  Nothing in **29 U.S.C. § 1002(21)(A)** requires either investment or

---

[4] Because the Court does not find Bank One liable, it need not consider the crossclaims that have been filed in this case between Ziegler and Bank One.

Case 2:01-cv-01119-DRH   Filed 08/16/06   Page 24 of 28   Document 199

possession of those assets. Authority or control suffices. *See **Brock v. Hendershott**, 840 F.2d 339, 342 (6th Cir. 1988)* (finding control over assets without possession); ***Blatt v. Marshall & Lassman**, 812 F.2d 810, 812-13 (2d Cir. 1987)* (same).

25.     The Court further declines to adopt Ziegler's argument that its actions in this case were purely ministerial. Here, Ziegler, as Plaintiffs' authorized agent, exercised authority and control over Plan assets by controlling the manner in which they were transferred from Bank One. This was a not a ministerial act. *See, e.g.,* **29 CFR 2509.75-8** (listing various ministerial acts that do not cause one to become a fiduciary).

26.     Therefore, the Court finds that Ziegler was an ERISA fiduciary. **29 U.S.C. § 1002(21)(A)(i)**.

27.     The Court next finds that Ziegler breached its fiduciary duty. A party directed not to liquidate stock holdings but who nonetheless, through its own carelessness, causes those holdings to be liquidated does not act as a reasonably businessperson. ***Ameritech Benefit Plan Comm.**, 220 F.3d at 825*.

28.     The Court is unpersuaded by Ziegler's argument that the decision to liquidate, itself, was not imprudent. This case is not about the decision to liquidate; that decision, after all, was Plaintiffs'. The issue, rather, is whether Ziegler performed the duties it was entrusted to perform with the requisite degree of prudence. ***Ameritech Benefit Plan Comm.**, 220 F.3d at 825*. The Court answers this question in the

negative.

29.     Therefore, the Court finds Ziegler liable for breach of fiduciary duty.

### Damages

30.     That leaves the question of damages.  As a general matter, a plan is entitled to recover losses suffered as a result of a fiduciary's breach of its duty of care.  ***Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982)**.

31.     "[T]he decision to impose a remedy lies within the court's discretion and should be 'in tune with the case's realities."  ***Etter v. J. Pease Constr. Co.*, 963 F.2d 1005, 1009 (7th Cir. 1992)** (citing ***Leigh v. Engle*, 858 F.2d 361, 368 (7th Cir. 1988)**).  "One appropriate remedy in cases of breach of fiduciary duty is the restoration of the trust beneficiaries to the position they would have occupied but for the breach of trust."  ***Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985)** (quoting **Restatement (Second) of Trusts § 205(c)**).

32.     Having considered the options suggested by the parties, the Court finds that the most appropriate remedy is a damages award that compensates Plaintiffs for the subject stock's appreciation between the point of liquidation and the point at which Plaintiffs learned or reasonably should have learned that the subject stock had been sold.

33.     An award that includes compensation for appreciation occurring after that date would unfairly enrich Plaintiffs.  Once they discovered (or reasonably should have discovered) the liquidation, after all, Plaintiffs were free to reinvest their money in the

subject stock. The Court finds that they should not now be compensated for their failure to do so. Likewise, the Court will not compensate the Plaintiffs for their failure to invest the funds in any way.

33.     The Court finds that Plaintiffs either discovered or reasonably should have discovered that the subject stock had been liquidated by January 16, 2001. The Alders received copies of the plan's fourth-quarter and year-end statement by that date.

34.     Those statements established that the subject stock had been sold by Bank One.

35.     There is ample evidence here that George Alder paid close attention to these reports and was sophisticated enough to read and understand them.

36.     Thus, the Court finds that Plaintiffs are entitled to the amount the subject stock would have appreciated after it was sold on December 29, 2001 until January 16, 2001, or $69,823.83.

37.     The Court also finds that prejudgment interest should be awarded here. There is a presumption in favor of awarding prejudgment interest in ERISA cases, ***Rivera v. Benefit Trust Life Ins. Co.*, 931 F.2d 692, 696 (7th Cir. 1991)**; *see also* ***Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 820 (7th Cir. 2002)**, which is compounded, ***Cement Div., Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1116 (7th Cir. 1998)**. The interest rate is within the Court's discretion. ***Fritcher*, 301 F.3d at 820**. Here, Plaintiffs' expert proposes using the 4.57% federal

Case 2:01-cv-01119-DRH   Filed 08/16/06   Page 27 of 28   Document 199

risk-free rate. The Court finds this rate appropriate. Therefore, the Court finds that Plaintiffs are entitled to an additional recovery of $19,765.88 from Ziegler, for a total of $89,589.71.

**IT IS SO ORDERED**.

Signed this 16th day of August, 2006.

/s/        David   RHerndon
**United States District Judge**

Case 2:01-cv-01119-DRH   Filed 08/16/06   Page 28 of 28   Document 199